**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 27 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

vs.

DALE L. ADAMS,

       Defendant - Appellant.

No. 00-3411

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 00-CR-10080-01-JTM)**

---

Nancy Landis Caplinger, Assistant United States Attorney (and James E. Flory, United States Attorney, on the briefs), Topeka, Kansas, for Plaintiff - Appellee[*].

Timothy J. Henry, Assistant Federal Public Defender (and David J. Phillips, Federal Public Defender, on the briefs), Wichita, Kansas, for Defendant - Appellant.

---

Before **KELLY** and **ANDERSON**, Circuit Judges and **STAGG**[**], District Judge.

---

**KELLY**, Circuit Judge.

---

[*]The appellee was unable to attend and thus, waived oral argument.

[**]The Honorable Tom Stagg, Senior District Judge, United States District Court for the Western District of Louisiana, sitting by designation.

Defendant-Appellant Dale L. Adams was found guilty by a jury of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and sentenced to 51 months and three years supervised release. At trial, the government relied upon a series of incriminating statements made by Mr. Adams immediately following his arrest. On appeal, he contends that the district court's exclusion of expert testimony by a clinical psychologist denied his right to due process and a fair trial. He also claims that his conviction under 18 U.S.C. § 922(g)(1) exceeds the scope of congressional power.

Background

Wichita police responded to a residential disturbance on March 2, 2000. Upon arriving at the scene, an officer looked into a vehicle occupied by Mr. Adams and another individual and saw a black plastic case, which he determined contained an assault-style semi-automatic pistol.

Upon questioning, Mr. Adams told the officer that both the vehicle and the weapon inside the vehicle belonged to him. The officer then retrieved the weapon, a 9mm semi-automatic pistol, from the interior of the car and arrested Mr. Adams on charges of possession of an illegal firearm. After being read his Miranda rights, Mr. Adams stated that he purchased the weapon a few days earlier, stowed it at his residence, and that day had removed it to the vehicle. Mr.

Adams gave the same account after the officers transported him to police headquarters where he was re-interviewed. In both statements, Mr. Adams provided details about his purchase of the weapon, such as the time, date, and location of purchase, and the name of the seller.

Mr. Adams was charged with possession of a firearm by a felon.[1] He was arraigned on June 16, 2000, and trial was set for August 22, 2000. After a possible plea agreement collapsed on August 14, 2000, defense counsel arranged a psychological examination for Mr. Adams. The defense anticipated introducing the resulting psychological report and, on August 18, 2000, delivered the report to the government. The government immediately moved for exclusion of the report, first, because the substance was inadmissible, and, second, because the defense notified the government about the report past the deadline set out in the district court's discovery order. The district court sustained the government's motion.

Mr. Adams tried again at the onset of trial to admit the psychologist's report, claiming that it was relevant to Mr. Adams's mental condition and education, factors that could be considered in judging the credibility of his incriminating statements. Again, the government objected to the substance and timing of the evidence and again the court excluded it.

At trial, the government relied heavily on the incriminating statements that

---

[1]Mr. Adams had a prior felony conviction for the sale of cocaine.

Mr. Adams made to the officers immediately following his arrest. Mr. Adams testified at trial, denying the veracity of his earlier confessions, and claiming that he lied to protect his girlfriend from incrimination. Nevertheless, the jury returned a guilty verdict.

## Discussion

A. Adequacy of the Offer of Proof

At the outset we are faced with the question of whether Mr. Adams made an offer of proof to the trial court adequate to preserve the claimed error of excluding the psychologist's testimony. "Error may not be based on a ruling excluding evidence unless 'the substance of the evidence was made known to the court by offer [of proof] or was apparent from the context within which questions were asked.'" Inselman v. S & J Operating Co., 44 F.3d 894, 896 (10th Cir. 1995) (quoting Fed. R. Evid. 103(a)(2)). On numerous occasions we have held that "'merely telling the court the content of ... proposed testimony' is not an offer of proof." Polys v. Trans-Colorado Airlines, Inc., 941 F.2d 1404, 1407 (10th Cir. 1991)(quoting Gates v. United States, 707 F.2d 1141, 1145 (10th Cir. 1983). In order to qualify as an adequate offer of proof, the proponent must, first, describe the evidence and what it tends to show and, second, identify the grounds for admitting the evidence. Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 802

(10th Cir. 2001); Polys, 941 F.2d at 1407. If the proponent's offer of proof fails this standard, then this court can reverse only in instances of plain error that affected appellant's substantial rights. Phillips, 244 F.3d at 802; Fed. R. Evid. 103(d).

A twofold purpose underlies these required showings. First, an effective offer of proof enables the trial judge to make informed decisions based on the substance of the evidence. Polys, 941 F.2d at 1406. Second, an effective offer of proof creates "a clear record that an appellate court can review to 'determine whether there was reversible error in excluding the [testimony].'" Id. at 1407 (quoting New Mexico Sav. & Loan Assoc. v. United States Fidelity & Guar. Co., 454 F.2d 328, 334 (10th Cir. 1972)).

Federal Rule of Evidence 103(a)(2) does not mandate a particular form for offers of proof. Instead, the rule invests the trial judge with discretion in determining the form of the offer. Fed. R. Evid. 103(b). There are at least four ways to make an offer of proof of testimony and achieve the purposes underlying the rule. 1 McCormick on Evidence § 51, at 216 n.9 (John W. Strong, 5th ed. 1999). First, and most desirable from all standpoints except cost, the proponent may examine the witness before the court and have the answers reported on the record. Id.; 21 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure § 5040, at 214 (1977). The question and answer method necessitates

- 5 -

excusing a jury, but this concern is not present when the offer of proof is made, as here, at a pretrial motion hearing. When the proponent proffers testimony in this manner, opposing counsel may be permitted "to cross-examine the witness to develop any factors which would put the proferred testimony in its true light." Wright & Graham § 5040, at 214.

The second, and least favorable, method for making an offer of proof of testimony is a statement of counsel as to what the testimony would be. Id. at 215. In this case, the colloquy between counsel and the district court was so lacking in detail that it is difficult to decipher why exclusion of the evidence might be error. During the hearing on the motion in limine, defense counsel stated that he had asked the examining psychologist to "look into whether or not [Mr. Adams's] personality, mental makeup, however you want to put it, would he be so inclined – given the testing that's done, would there be a possibility that he would give a false statement to the police." R.O.A. Supp. Vol. I, at 4. Counsel then proffered that the examining psychologist had "suggested in one of the paragraphs [of the report]... that his personality certainly is one that could have been – statements to the police could have been false." Id.

An offer of proof of testimony by counsel is the least favored method because of its potential to fall short of the standard required by the rules of evidence as well as the standard set out in Phillips and Polys. Defense counsel's

- 6 -

offer of proof made during the colloquy with the judge illustrates the potential

pitfalls of this method.  Specificity and detail are the hallmarks of a good offer of

proof of testimony, Wright & Graham § 5040, at 213, and conclusory terms,

especially when presented in a confused manner, mark poor ones.  1 Christopher

B. Mueller & Laird C. Kirkpatrick, <u>Federal Evidence</u> § 14, at 71 (2d ed. 1994).

Defense counsel hardly met the baseline requirement of "'merely telling the court

the content of ... [the] proposed testimony." <u>Polys</u>, 941 F.2d at 1407.  As for the

additional requirements set out in <u>Phillips</u> and <u>Polys</u>, counsel did not explain the

significance of the proposed evidence or what he expected the evidence to show.

<u>Phillips</u>, 244 F.3d at 802; <u>Polys,</u> 941 F.2d at 1407.  Nor did counsel clearly

identify "the grounds for which [he] believes the evidence to be admissible."  <u>Id.</u>

Documentary offers of proof comprise the third and fourth proper forms of

proffering anticipated testimony.  McCormick § 51, at 216 n.9.  The first of these,

and least common, is a statement written by examining counsel describing the

answers the proposed witness would give if permitted to testify.  <u>Id.</u>  More

common, and relevant to this case, the proponent of the evidence may introduce a

"written statement of the witness's testimony signed by the witness and *offered as*

*part of the record*."  <u>Id.</u> (emphasis added).  In using either method of documentary

proffer for anticipated testimony, "[i]t is suggested...that the writing be marked as

an exhibit and introduced into the record for proper identification on appeal."  <u>Id.;</u>

see also Palmer v. Hoffman, 318 U.S. 109, 116 (1943); 1 Michael H. Graham, Handbook of Federal Evidence, § 103.7, at 61 (5th ed. 2001). Indeed the primary, formal reason for an offer of proof is "to preserve the issue for appeal by including the proposed answer and expected proof *in the official record of trial*." McCormick § 51, at 216 n.9 (emphasis added).

On the morning of the pretrial hearing, counsel for Mr. Adams apparently sent a facsimile of the psychologist's report directly to the district court judge, who referred to the report during the hearing. R.O.A. Supp. Vol. I, at 8. The report was not marked as an exhibit. "Documents and other exhibits are usually marked for identification and become part of the record on appeal, even if excluded." Wright & Graham § 5040, at 213. Nor was it filed as an exhibit to a pleading. The report is not part of the record below.

Merely sending a facsimile of the psychologist's report to the judge on the morning before the hearing unfortunately does not guarantee that the faxed item will actually be marked as an exhibit or filed and become part of the record. Our rules anticipate that when an appeal is based upon the challenge to the admission or exclusion of evidence, we be furnished not only with pertinent transcript excerpts, but also with pertinent trial exhibits that are part of the record. 10th Cir. R. 10.3(D)(1) & (2).

Mr. Adams has moved to supplement the record. The appellate rules allow

supplementation of the record on appeal in instances where "anything material...is omitted from or misstated in the record by error or accident." Fed. R. App. P. 10(e)(2). Because the district court judge did make passing reference to a recently faxed psychologist's report, R.O.A. Supp. Vol. I, at 8, and because counsel as an officer of the court represents that this is the same report that was before the district court, and because the government does not oppose it, we will grant the motion. We remind counsel, however, of the importance of a valid, properly presented, detailed, and recorded offer of proof when testimony is involved and of the importance of insuring that supporting documentary evidence be made part of the record.

B. Exclusion of Psychologist's Testimony

The admission or exclusion of expert testimony is reviewed for abuse of discretion. United States v. Rice, 52 F.3d 843, 847 (10th Cir. 1995). However, Mr. Adams suggests that, in this case, exclusion of the psychologist's report effectively precluded Mr. Adams's theory of defense, thereby violating his right to a fair trial and due process – a violation that he claims warrants de novo review. We disagree. Mr. Adams cites United States v. Smith, 63 F.3d 956 (10th Cir. 1995), and United States v. Bindley, 157 F.3d 1235 (10th Cir. 1998), as evidence that de novo review is required here. Aplt. Br. at 12. Both cases are inapposite. Both Smith and Bindley determined that it was reversible error for a

trial court to refuse a jury instruction on a theory of defense after a defendant makes a threshold showing as to each element of the defense, and that the adequacy of the defendant's threshold showing is reviewed de novo. Smith, 63 F.3d at 965; Bindley, 157 F.3d at 1241. But while an adequate threshold showing entitles a defendant to a jury instruction on that theory of defense, it does not entitle that defendant to have admitted whatever evidence he desires to support that theory. The Constitution affords trial judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, poses an undue risk of harassment, prejudice, or confusion of the issues, or is otherwise excluded through the application of the evidentiary rules. Crane v. Kentucky, 476 U.S. 683, 689-90 (1986). Mr. Adams confuses a fundamental right, the right to present a theory of defense, with one that is not fundamental, the right to present that theory in whatever manner and with whatever evidence he chooses. Exclusion of the report was an evidentiary ruling which we review for abuse of discretion. Rice, 52 F.3d at 847.

1. Exclusion Based Upon Timing.

On June 21, the district court issued a discovery order requiring the defendant to file all motions and notices pursuant to Federal Rules of Criminal Procedure 12(b)(1), 12(b)(2), and 12.2 no later than 30 days following arraignment. R.O.A. Vol. I: 11. The order also warned that failure to comply

with this order or to show good cause for not being able to comply may result in disallowance of use of evidence or defenses not disclosed. Id. Mr. Adams concedes that his failure to notify the government of the psychological report until three days prior to trial – over a month past the prescribed deadline – permits sanctions by the district court under Rule 16 of the Federal Rules of Criminal Procedure. Aplt. Br. at 16-17. Nevertheless, Mr. Adams claims that the district court erred when it excluded this evidence as untimely.

The test for determining whether a witness was appropriately excluded for untimely disclosure was described in United States v. Wicker, 848 F.2d 1059, 1061 (10th Cir. 1988). In Wicker, the court considered three factors: (1) the reason for the delay in disclosing the witness; (2) whether the delay prejudiced the other party; and (3) the feasibility of curing any prejudice with a continuance. Id.

The court clearly weighed the first Wicker factor concerning the reason for the delay in identifying the proposed witness, noting that three months had passed since the defendant's indictment, that defense counsel knew or should have known of defendant's claim that he lied to the police in order to protect his girlfriend, and that concerns about the defendant's mental state and ability had been raised by the defendant's grandmother both prior to and at the plea hearing. R.O.A. Supp. Vol. I, at 6-7.

The court did not explicitly weigh the second factor, the potential prejudice to the government, or the third factor, the feasibility of granting a continuance. While the court in <u>Wicker</u> suggested that a district court "should consider [the three factors] in determining if a sanction is appropriate," the court also noted that the three factors "merely guide the district court" and do not "dictate the bounds of the court's discretion." <u>Id</u>. Furthermore, even in the absence of prejudice, a district court may suppress evidence that "did not comply with discovery orders to maintain the integrity and schedule of the court..." <u>Id</u>. The district court justifiably excluded the evidence on the basis of its unexplained untimeliness alone.

The record on appeal indicates, however, that the final two factors weigh strongly in favor of exclusion of the evidence. First, Mr. Adams's notice of intent to introduce expert psychological testimony only three days before a trial date, left the government no opportunity to conduct its own psychological examination of the defendant, or otherwise mount a rebuttal. The untimely notice seems significantly prejudicial to the government.

With regards to the third factor, the feasibility of a continuance, the government suggested during the hearing in limine that it would need up to 120 days to conduct its own psychological examination of Mr. Adams, as permitted under Rule 12.2(c) of the Federal Rules of Criminal Procedure. R.O.A. Supp.

Vol. I, at 3. A continuance adequate to accommodate the described needs of the government would significantly delay the trial. We agree with the district court that its ruling could be sustained on the grounds of untimeliness alone.

2. Exclusion Based on the Substance of the Evidence

Mr. Adams also challenges the exclusion of the psychologist's report on the basis of its substance. Mr. Adams sought to introduce the psychological evidence in order to diminish the credibility of his earlier statements to the police. R.O.A. Supp. Vol. I at 4-5. On appeal, he indicates that "[t]he proffered testimony . . . showed Adams' neurocognitive impairment and dependent personality structure [and] support[s] the possibility the statements he gave to the police were false." Aplt. Br. at 14.

Mr. Adams cites Crane v. Kentucky, 476 U.S. 683 (1986), as precedent for allowing expert testimony bearing on the credibility of prior testimony or a confession. Aplt. Br. at 15-16. Crane did distinguish pretrial inquiries into the voluntariness of a confession from a defendant's challenge to the reliability of the confession during the course of the trial. Crane, 476 U.S. at 687. Even after a confession is deemed voluntary, evidence concerning the "physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of a defendant's guilt or innocence." Id. at 689. The "blanket exclusion" of evidence regarding the circumstances of a

confession precludes a fair trial.  Id. at 690.  Crane did not address, however, whether the "physical and psychological environment that yielded the confession," id. at 689, includes the psychological makeup of the confessor, or when expert testimony should be admitted to address that element.  Only two circuit courts have dealt with the question of the admissibility of expert testimony concerning credibility, and both, under the facts of those cases and the manner of presentation, concluded that the respective trial court committed error in excluding such testimony.  United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995); United States v. Hall, 93 F.3d 1337, 1346 (7th Cir. 1996).

A district court may allow expert testimony "[i]f [the expert] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.[2]  The Supreme Court has held that Rule 702 imposes a special obligation upon a trial judge to ensure that all expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993).

We have said that "[t]he credibility of witnesses is generally not an

_____

[2] An amendment to Federal Rule of Evidence 702 became effective December 1, 2000, after the trial in this case.

appropriate subject for expert testimony." Toledo, 985 F.2d at 1470. Though Crane prohibits categorical exclusion of this type of evidence, it does not require its categorical admission – the rules of evidence still apply. There are a variety of reasons that evidence related to the credibility of a confession may be excluded. First, "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702." United States v. Charley, 189 F.3d 1251, 1267 (10th Cir. 1999) (quoting Rule 702). See also United States v. Call, 129 F.3d 1402, 1406 (10th Cir. 1997) (testimony concerning credibility is often excluded because it usurps a critical function of the jury, which is capable of making its own determinations regarding credibility); United States v. Samara, 643 F.2d 701, 705 (10th Cir.), cert. denied, 454 U.S. 829 (1981). Also, a proposed expert's opinion that a witness is lying or telling the truth might be "inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion." Shay, 57 F.3d at 131. Yet another rationale for exclusion is that the testimony of impressively qualified experts on the credibility of other witnesses is prejudicial, unduly influences the jury, and should be excluded under Rule 403. Toledo, 985 F.2d at 1470; cf. Call, 129 F.3d at 1406 (polygraph results may be

- 15 -

excluded under Rule 403 because jury may overvalue scientific results as indication of truthfulness).

In this case, Mr. Adams defended on the basis that the repeated, incriminatory statements he gave to law enforcement were untrue, made only to protect his girlfriend, who he believed at the time to be pregnant. R.O.A. Vol. II, at 208-09. The expert concluded that Mr. Adams's low neurocognitive functioning and dependent personality structure "strongly raise[] the possibility, *given the conflicting explanations made by Mr. Adams and others*, that he was not telling the truth when he made incriminating statements to Wichita Police Officers and ATF agents. His statements that he was "protecting a girlfriend" when he confessed to possession of the firearm is consistent with his personality and cognitive state, and indicative of his difficulty making appropriate and reasoned choices." Report at 5 (emphasis added).

The district court was careful to recognize that, in some circumstances, credibility testimony by an expert might be allowed, however, it did not abuse its discretion in excluding it here. R.O.A. Supp. Vol. I, at 8. The psychologist, in light of the conflicting explanations and his evaluation of Mr. Adams, concluded that Mr. Adams's account (that he lied to protect his pregnant girlfriend) was plausible, albeit misguided. We have reviewed the report, and find the district court within its discretion in holding that the report was little more than a

professionally-trained witness testifying that, based upon his history, "Mr. Adams is the type of person who would have lied about his involvement to the police." Id. at 7. This case is readily distinguishable from Hall, 93 F.3d at 1341, where the defendant claimed that a personality disorder caused him to confess during interrogation and sign a statement in order to gain approval of his interrogators, and Shay, 57 F.3d at 129-30, where the defendant claimed that his confession was the product of a mental disorder characterized by an extreme form of pathological lying. In this case, there simply is no question about the voluntariness of the confessions–and defendant's recantation that he lied in order to protect his girlfriend is precisely the type of explanation that a jury is capable of resolving without expert testimony. The offered testimony does little more than "vouch for the credibility of another witness" and thereby "encroaches upon the jury's vital and exclusive function to make credibility determinations." Charley, 189 F.3d at 1267. The judge was well within his discretion in determining that the evidence lacked relevance and would not "assist the trier of fact as required by Rule 702." Id.

C. Commerce Clause

Finally, Mr. Adams raises a facial challenge to 18 U.S.C. § 922(g)(1), claiming that enactment of the possession statute exceeded congressional power under the Commerce Clause. Citing United States v. Lopez, 514 U.S. 549 (1995),

United States v. Morrison, 529 U.S. 598 (2000), and Jones v. United States, 529 U.S. 848 (2000), Mr. Adams claims that mere possession of a firearm does not "affect interstate commerce," and is therefore insufficient to meet the federal jurisdictional requirement. Aplt. Br. at 19-23. Our decision in United States v. Dorris, 236 F.3d 582 (10th Cir. 2000), resolved this issue and now forecloses Mr Adams's facial challenge to the statute.

AFFIRMED.