PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 4/30/96** TENTH CIRCUIT

| | |
|---|---|
| KUSUM R. PANDIT, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| and | ) |
| | ) |
| GANESH S. PANDIT, deceased, by and through his Special Administrator, Rejeev S. Pandit, and LALITA PANDIT, deceased, by and through her Special Administrator, Rejeev S. Pandit, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 95-3151 |
| | ) |
| AMERICAN HONDA MOTOR CO., INC., HONDA MOTOR CO., LTD., and HONDA R&D CO., LTD., | ) |
| | ) |
| Defendants-Appellees. | ) |

Appeal from the United States District Court
for the District of Kansas
(No. 90-CV-1506)

Kenneth G. Gale (David P. Calvert with him on the brief), of Focht, Hughey & Calvert, of Wichita, Kansas, for the appellant.

Evan A. Douthit, of Douthit Frets Rouse & Gentile, L.L.C., of Kansas City, Missouri, (Randall L. Rhodes, of Douthit Frets Rouse & Gentile, L.L.C., of Kansas City, Missouri, and Larry A. Withers, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, Kansas, with him on the brief), for the appellees.

Before SEYMOUR, Chief Judge, HOLLOWAY and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Appellant Kusum Pandit was injured when a Honda Accord in which she was a passenger stalled on Interstate 70 and was struck from behind by a Ford Bronco. Appellant sued the driver of the Bronco, American Honda Motor Co., Inc., Honda Motor Co., Ltd., and Honda R&D Co., Ltd. After appellant settled with the driver of the Bronco, she proceeded to trial against the remaining three defendants (collectively appellees) on a strict liability design defect claim, and the jury found in appellees' favor. She appeals three evidentiary rulings. We affirm.

I.

On March 25, 1990, appellant was the front seat passenger in a 1981 Honda Accord driven by her husband, and her brother-in-law and sister-in-law were riding in the back seat. They were crossing western Kansas, traveling east on Interstate 70. According to appellant's husband, at approximately 11:00 p.m., the headlights "twitched" and gradually began to dim. He checked the instrument panel, but none of the warning lights had activated. He mentioned the problem to his brother, and the two men began to look for an exit from the Interstate. The headlights suddenly became so dim that appellant's husband was unable to see the road. He reduced the speed of the Accord and began to pull to the side of the road. The engine stalled, and the charge warning light activated. The car came to a stop in the right-hand lane. His brother suggested they push the Accord onto the shoulder, and appellant's husband got out of the car. Before getting out of the car himself, his brother indicated another vehicle was coming. Appellant's husband took a white plastic bag from under the driver's seat and began waving it in an attempt to attract the oncoming driver's attention, but his efforts were unsuccessful. The oncoming vehicle, a Ford Bronco, struck the Accord, seriously injuring appellant and killing her in-

2

laws.

Appellant sued the driver of the Bronco and appellees on various theories of negligence and strict liability. The driver settled with appellant and her claims against him were dismissed with prejudice. Appellant proceeded against appellees on only a strict liability defective design claim. She contended the Accord's charge warning light system was defectively designed and unreasonably dangerous because the charge light would not illuminate until the alternator was almost completely disabled. She alleged the alternator was capable of producing a partial charge sufficient to prevent the warning light from activating but insufficient to supply the battery with enough charge to operate the headlights and the fuel pump. The engine cannot run without the fuel pump. She argued the system was defective because it did not detect the reduced output and, as a result, it did not warn the driver about an imminent dangerous situation.

## II.

Appellant argues the court erred by (A) admitting evidence of the lack of prior similar claims, (B) admitting evidence of three tests conducted by one of appellees' experts, and (C) excluding excerpts of a deposition she offered as rebuttal.

## A.

The court allowed appellees to cross-examine appellant's expert witnesses about their knowledge of prior similar claims and to question one of their own expert witnesses about the absence of prior similar claims.[1] The parties filed trial briefs in which they

---

[1] The parties argue this issue in terms of prior similar "claims," as opposed to prior similar "accidents." Appellant does not distinguish between "claims" and "accidents"; indeed, she relies heavily on our prior similar "accidents" case law. We believe the parties use the terms interchangeably.

discussed the admissibility of evidence regarding the lack of prior similar claims. Appellees' append. 4-5 (appellees' trial brief); appellant's append. I at 51-57 (appellant's supplemental trial brief). The court first addressed the question when appellant requested that appellees be prevented from raising the lack of prior claims in their opening statement. Appellant's append. I at 233-237. The court assented and ordered appellees to refrain from raising the issue in their opening. Id. at 236. The court returned to the question immediately before appellant's direct examination of Dr. Ward Jewell, one of her expert witnesses. Id. at 279-88. After a brief hearing, the court allowed appellees to cross-examine Dr. Jewell about his knowledge of the existence of similar claims. Id. at 282, 288. Without a contemporaneous objection by appellant, appellees cross-examined both of appellant's experts about their knowledge of the existence of similar claims. Appellees' append. at 160-61, 170. During the defense case-in-chief, appellees explicitly asked Robert Scholke, a product investigator for Honda North America and one of appellees' expert witnesses, about the existence of prior similar claims against Honda. Id. at 286. Additionally, Joseph Kinderman, another of appellees' experts, testified that he did not believe the Accord's warning system was defectively designed because many automobiles contained the system and he had heard of no similar complaints. Appellant's append. III at 656-57. Appellant did not make a contemporaneous objection to the questions asked Scholke or to the testimony given by Kinderman.

We review evidentiary rulings for abuse of discretion. Boughton v. Cotter Corp., 65 F.3d 823, 832 (10th Cir. 1995). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible

4

choice in the circumstances." Id. (quoting McEwen v. City of Norman, Oklahoma, 926 F.2d 1539, 1553 (10th Cir. 1991)). However, if the complaining party fails to make a contemporaneous objection, we determine only if the ruling was plain error. Fed. R. Evid. 103(d); McEwen, 926 F.2d at 1545.

Appellees contend appellant did not object when they elicited testimony about the lack of prior claims. They argue waiver and suggest we may review only for plain error. A three-part test determines whether a party must renew a motion in limine by a contemporaneous objection at trial to preserve an issue for appeal. Green Const. Co. v. Kansas Power & Light Co., 1 F.3d 1005, 1013 (10th Cir. 1993) (citing United States v. Mejia-Alarcon, 995 F.2d 982, 987 (10th Cir.) (establishing the rule), cert. denied 114 S.Ct. 334 (1993)). To overcome the claim of waiver for failure to contemporaneously object, we must satisfy ourselves that (1) the matter was adequately presented to the district court; (2) the issue was of a type that can be finally decided prior to trial; and (3) the court's ruling was definitive. Id. All three elements are satisfied here: the parties argued the question in their trial briefs, before appellees' opening, and again before appellees' cross-examination; as presented by appellant, the question involved a general legal issue which was capable of decision prior to trial; and the court addressed the issue definitively and in detail, appellant's append. I at 279-88. We reject appellees' waiver argument and turn to the merits of appellant's first issue.

We have held that evidence of similar accidents is admissible in a products liability case if the proponent provides a proper predicate. Wheeler v. John Deere Co., 862 F.2d 1404, 1407 (10th Cir. 1988); Ponder v. Warren Tool Corp., 834 F.2d 1553, 15690 (10th Cir. 1987); Rexrode v. American Laundry Press Co., 674 F.2d 826, 829 n. 9 (10th Cir.),

cert. denied 459 U.S. 862 (1982).  This court has not addressed the converse--whether the lack of prior similar accidents is likewise admissible. Other courts and commentators generally agree that evidence of the lack of similar accidents is relevant to show (1) absence of the defect or other condition alleged, (2) lack of a causal relationship between the injury and the defect or condition charged, and (3) nonexistence of an unduly dangerous situation.  See, e.g., Espeaignnette v. Gene Tierney Co., 43 F.3d 1, 9-10 (1st Cir. 1994); Hines v. Joy Mfg. Co., 850 F.2d 1146, 1152 (6th Cir. 1988); Sturm v. Clark Equipment Co., 547 F. Supp. 144, 145 (W.D. Mo. 1982), aff'd 732 F.2d 161 (8th Cir. 1984); 1 McCormick on Evidence, § 200, pp. 850-51 (John W. Strong 4th ed. 1992).  Cf. Klonowski v. International Armament Corp., 17 F.3d 992, 996 (7th Cir. 1994) (upholding exclusion of testimony because foundation lacking and discussing proper foundation); Thomas R. Mulia, Annotation, Products Liability: Admissibility of Evidence of Absence of Other Accidents, 51 A.L.R. 4th 1186 (1987).  We believe this approach, which is supported by the greater weight of persuasive authority, is the better reasoned view. Accordingly, we conclude that evidence of the absence of similar accidents or claims is admissible as long as the proponent provides adequate foundation.  To the extent appellant argues evidence of lack of prior claims is per se inadmissible to prove defective design, her argument is without merit.

Appellant also argues the evidence lacked adequate foundation.  Specifically, she contends appellees failed to show "substantial similarity" between the conditions giving rise to the absence of prior claims and the conditions on the night of the accident.  She imports the "substantial similarity" standard from Wheeler, in which we acknowledged that evidence of similar accidents is admissible in strict products liability actions to

demonstrate the existence of a defect. 862 F.2d at 1407-08. In Wheeler, we explained that "[b]efore introducing such evidence, the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident involved in the present case." Id. at 1407. However, we did not address the showing required for admission of absence-of-claims evidence such as that at issue here.

Evidence of the absence of prior similar claims will not be admitted unless it relates to a substantially similar product "'used in settings and circumstances sufficiently similar to those surrounding the [product] at the time of the accident to allow the jury to connect past experience with the accident sued upon.'" Klonowski, 17 F.3d at 996 (quoting Walker v. Trice Mfg. Co., 487 F.2d 595, 599 (7th Cir.), cert. denied 415 U.S. 978 (1974)). Accord Espeaignnette, 43 F.3d at 10. A reasonable reading of the record indicates these elements are satisfied here. First, Honda used a charge warning light system of the same design in all of its 1981 Accords and in a total of nearly 1.9 million automobiles between 1973 and 1981. Appellees' append. 286. There is no dispute the evidence relates to a substantially similar product. Second, the accident occurred while the Accord was being driven on a highway at night. Although appellant argues dissimilarity in "settings and circumstances" as regards the product's use, her argument is overly restrictive and unpersuasive. The appendices reveal no significant dissimilarity between this car's use and normal use of any other 1981 Honda Accord with a system of the same design. We find no abuse of discretion.

B.

Prior to trial, Kinderman performed three experiments: two on an exemplar Accord and one on an exemplar alternator. He videotaped two of the experiments. At trial, he

opined Honda's charge warning system design was neither defective nor unreasonably dangerous. Appellees' append. 295, 296, 346-47. More specifically, he disputed appellant's experts' claim that an alternator could produce a sustained diminished charge sufficient to prevent the charge warning light from activating but insufficient to maintain the battery. Id., at 296-97. To demonstrate the principles underlying his opinion, he discussed each of his experiments and played portions of the two videotaped experiments. He prefaced his discussion by explaining he had never tried to recreate the events leading up to the accident. Before playing the videotapes, the court twice instructed the jury the tapes were admitted only to demonstrate Kinderman's testimony and not as evidence of what happened on the night of the accident. Id. at 313, 336. Additionally, in the final jury instructions, the court explained the tapes had been admitted for the limited purpose of assisting the witness in explaining his opinions and the tapes were not a recreation of the events involved in the accident. Appellant's append. I at 85 (jury instruction #22).

Appellant argues the court erred by admitting evidence of Kinderman's three demonstrative experiments. A district court has broad discretion in deciding evidentiary matters including the admissibility of experiments. Four Corners Helicopters v. Turbomeca, 979 F.2d 1434, 1441-42 (10th Cir. 1992). Accordingly, we will not disturb the court's decision unless we have a definite and firm conviction it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. Gilbert v. Cosco, 989 F.2d 399, 402 (10th Cir. 1993) (quoting McEwen, 926 F.2d at 1553-54).

In Gilbert, we explained generally as follows:

> As a general rule, the proponent seeking to admit out-of-court experiments into evidence must demonstrate a "'similarity of circumstances and conditions'" between the tests and the subject of litigation. Jackson v. Fletcher, 647

8

> F.2d 1020, 1027 (10th Cir. 1981) (quoting Navajo Freight Lines v. Mahaffy, 174 F.2d 305, 310 (10th Cir. 1949)). See also Robinson v. Audi NSU Auto Union Aktiengesellschaft, 739 F.2d 1481, 1484 (10th Cir. 1984); Brandt v. French, 638 F.2d 209, 212 (10th Cir. 1981). "The purpose of this rule is to prevent confusion of the jury." Robinson, 739 F.2d at 1484 (citing Jackson, 647 F.2d at 1027). A recognized exception to this rule exists when the experiment merely illustrates principles used to form an expert opinion. In such instances, strict adherence to the facts is not required. Four Corners Helicopters, 979 F.2d at 1442; Robinson, 739 F.2d at 1484; Brandt, 638 F.2d at 212. See also Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261 (7th Cir.1988). Therefore, experiments which purport to recreate an accident must be conducted under conditions similar to that accident, while experiments which demonstrate general principles used in forming an expert's opinion are not required to adhere strictly to the conditions of the accident. Furthermore, "when experiments do not simulate the actual events at issue, the jury should be instructed that the evidence is admitted for a limited purpose or purposes." Robinson, 739 F.2d at 1484 (citing Brandt, 638 F.2d at 212); Bannister, 812 F.2d at 1270.

989 F.2d at 402.[2]

The parties dispute whether the experiments were recreations or merely demonstrations. In his first experiment, Kinderman placed a switch on the alternator of an exemplar Accord, which allowed him to shut off the alternator. The charge warning light activated as soon as he disabled the alternator. After shutting off the alternator, he turned on the headlights and drove until the engine stalled. The experiment demonstrated the sequence which normally follows the disabling of an alternator. In his second experiment, conducted at night, he parked the Accord, turned on the headlights, and disabled the alternator. The engine eventually stalled; however, the headlights remained on after the engine quit. The second experiment demonstrated the battery produced

---

[2] The "variation" we acknowledged in footnote three of Gilbert does not affect our resolution of this case; nor have the parties raised it.

enough charge to run the headlights even when it produced too little charge to run the fuel pump. In his third experiment, he altered an exemplar alternator by forcing the brushes apart from the slip rings. He designed his third experiment to demonstrate the alternator was incapable of producing a sustained diminished charge in the manner suggested by appellant.

As in Gilbert, the experiments ultimately were used to assist an expert in demonstrating principles which formed the basis of his opinion. Kinderman testified he performed the experiments merely to demonstrate the basic principles underlying his opinion, and it is clear the court admitted them for the same limited purpose. Indeed, on three different occasions the court instructed the jury about the limited purpose for which it could use the Kinderman videotapes. Although the court gave limiting instructions only as to the videotapes, appellant did not request an additional instruction regarding the remaining unrecorded demonstrative experiment, either at the time appellees elicited the testimony from Kinderman or during the initial hearing on the jury instructions. The court's failure to give an additional limiting instruction was not reversible error because appellant failed to request an additional instruction, and she has not shown she suffered any prejudice given that the jury otherwise was informed the experiments were merely demonstrative. Cf. Gilbert, 989 F.2d at 404 (holding trial court's failure to give a limiting instruction regarding several demonstrative experiments was not reversible error where appellant failed to request it and "other evidence" informed the jury of the limitations). Our review of the parties' appendices persuades us the distinction between demonstration and recreation was not so blurred as to create an impermissible risk of unfair prejudice. The court did not abuse its discretion.

C.

At the close of the defense case-in-chief, appellant asked to admit portions of the driver's deposition to rebut appellees' suggestion that the Accord's headlights always remained on, even after the car stalled. Appellant's append. III at 808-10. The court refused appellant's request, explaining, in part, that "[a]ll of this could have been put in during the Plaintiff's case in chief and I don't think it's proper rebuttal." Id. at 810.

Citing no authority, appellant argues reversible error. Review is for abuse of discretion. Marsee v. United States Tobacco Co., 866 F.2d 319, 324 (10th Cir. 1989). More specifically, we have explained that "[a] district court possesses considerable discretion in governing the presentation of evidence, and its decisions will not be disturbed absent manifest injustice to the parties." Comcoa v. NEC Telephones, 931 F.2d 655, 663 (10th Cir. 1991). We find no manifest injustice here.

Appellant's husband was her primary fact witness. He testified the headlights dimmed and then went out as he was driving. During the defense case-in-chief, Kinderman opined it is impossible for an Accord's headlights to go out before the engine quits. Appellant's append. III at 705-06. After the defense case-in-chief, appellant sought to rebut Kinderman's opinion by reading the deposition of the driver of the Bronco into evidence. In his deposition, the driver testified the Accord was parked with its lights off. He did not testify the lights went off before the engine died. Even assuming the driver's deposition rebutted Kinderman's testimony, the deposition was available to appellant during her case-in-chief and, given the nature of appellees' impeachment of appellant's husband, there is no indication that Kinderman's testimony was unexpected. See Lubanski v. Coleco Industries, 929 F.2d 42, 47 (1st Cir. 1991) (affirming exclusion of

11

rebuttal evidence that was available to plaintiff during her case-in-chief and not unexpected).  Cf. Marsee, 866 F.2d at 324 (affirming exclusion of rebuttal testimony that would have been repetitive of issues raised during plaintiff's case-in-chief).

III.

We conclude that, as to each of the three evidentiary rulings appellant challenges, the district court did not abuse its discretion.  AFFIRMED.