**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 24 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBERT D. BARON, guardian
ad litem on behalf of Donald Neal
White, an incapacitated person,

      Plaintiff-Appellant,

v.

SAYRE MEMORIAL HOSPITAL,
INC.; KENNETH WHINERY, M.D.,

      Defendants-Appellees.

No.  99-6288
(D.C. No. 98-CV-243-A)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **McKAY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Robert D. Baron, the guardian ad litem for Donald Neal White, brought this diversity action under 28 U.S.C. § 1332, alleging that defendants were negligent in their emergency-room treatment of White, leaving him a quadriplegic with permanent brain damage. Following a seven-day trial, the jury returned a verdict in favor of defendants. Plaintiff now appeals from the unfavorable jury verdict, arguing that the district court improperly allowed the introduction of evidence of White's prior criminal convictions on the theory that his criminal record is relevant to the jury's consideration of damages for pain and suffering, enjoyment of life, and future care. Exercising our jurisdiction under 28 U.S.C. § 1291, we determine that if the court committed any error in admitting the contested evidence, the error was harmless. See 28 U.S.C. § 2111; Fed. R. Evid. 103(a); Fed. Civ. P. 61. We therefore affirm.

## FACTUAL BACKGROUND [1]

### A. White's medical treatment

On the night of April 10, 1996, White was riding his motorcycle in Sayre, Oklahoma, alone, intoxicated, and without a helmet. After a report of an accident, received around 11:00 p.m., emergency medical technicians (EMTs)

---

[1]     Because plaintiff is challenging a jury verdict, we recounted the facts "in the light most favorable to the prevailing party." United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd. , 210 F.3d 1207, 1227 (10th Cir. 2000) (quoting Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co. , 104 F.3d 1205 (10th Cir. 1997)).

found him lying on the edge of a residential street, approximately ten to twenty feet from his motorcycle. At first, White was totally unresponsive. When the EMTs attempted to administer intravenous solutions, White regained consciousness and resisted treatment. The EMTs, however, persuaded him to be transported to the emergency room at Sayre Memorial Hospital, a small community facility.

The ambulance arrived at the hospital approximately 11:15 p.m. There, Carole Jackson, a registered nurse, had the initial responsibility of assessing White's condition. Jackson described White's attitude as combative, in that he resisted all efforts to examine him and was verbally abusive. Jackson detected a strong odor of alcohol surrounding him. Upon the arrival of defendant Kenneth Whinery, M.D., White continued to be agitated and uncooperative. Dr. Whinery was able to conduct an examination, although he decided to postpone the taking of an x-ray until White was calmer. From his examination, Dr. Whinery found no visible injury but determined that, under the circumstances, he must rule out a possible head injury. In spite of White's protests, White was placed in a hospital room for observation at 12:00 midnight, rather than released to go home.

White did not cooperate with Jackson's efforts to monitor his condition. Although she generally obtained vital signs during her periodic checks on him, she did not procure complete data for entry on the standard neurological flow

sheet. At one point, he vomited and would not let her remove his shirt. When a family member arrived, however, he allowed the shirt to be removed. In addition, he permitted a police officer to draw a blood sample to be tested for alcohol level. [2]

At 2:45 a.m., White had a neurological collapse: he began seizure activity; he was unresponsive to verbal and painful stimuli; his respiration was loud and snoring; and his left pupil was dilated. Jackson called Dr. Whinery, who arrived back at the hospital within ten minutes. Dr. Whinery realized that White had an intracranial bleed, a condition with a high mortality rate. White would have to be transferred to a larger medical facility for emergency neurosurgery. Around 3:30 a.m., Dr. Whinery called Presbyterian Hospital in Oklahoma City to see if it would accept White for surgery. That facility turned him down. At 4:00 a.m., he called University Hospital, which agreed to accept White.

When Dr. Whinery was not making calls to other facilities, he spent some time providing direct care to White. For instance, before making the first call, he ordered x-rays of White's skull. Later, he prepared White for transfer by Mediflight transport under the instructions of University Hospital personnel.

---

[2]     A later analysis showed a blood alcohol level of .13. Under the Oklahoma motor vehicle laws, evidence of "an alcohol concentration of ten-hundredths (0.10) or more [is] prima facie evidence that the person was under the influence of alcohol." Okla. Stat. Ann. tit. 47, § 756(A)(3).

Mediflight left Sayre Memorial Hospital with White on board at approximately 6:30 a.m.

At University Hospital, a computed tomography (CT) scan revealed that White had a large epidural hematoma. Neurosurgeons performed a left craniotomy for evacuation of the hematoma, which relieved the pressure on his brain. White remained at University Hospital until May 6, when he was transferred to a transitional care hospital. White is now permanently brain-damaged, unable to walk or care for his basic hygiene.

## B.      District court proceedings

White's guardian filed this medical malpractice suit, asserting that White's injuries were caused by a negligent delay in diagnosing and treating the epidural hematoma. He sought damages for pain and suffering and for White's care for the remainder of his life, but not damages for lost income. In pretrial proceedings, he filed a motion in limine requesting exclusion of evidence of White's criminal record on the ground that it was irrelevant. See Appellant's Amended App., Tab 6. [3]

---

[3]      The record on appeal shows the introduction of convictions for second degree burglary, Appellant's Amended App., Tab 11 at 5, 20, 30; operating a motor vehicle while under the influence of alcohol, id. at 37; possession of marihuana, id. at 46; transportation of beer in opened container, id. at 50; driving under suspension, id. at 51; knowingly concealing stolen property, id. at 76; and burglary in the second degree and causing, aiding, abetting or encouraging

(continued...)

Shortly before trial, the court ruled that White's criminal history was pertinent to damages, stating that jury should be permitted to know about White's life "before the malpractice, compared with what kind of life he [is] having now." See Appellee's Supp'l App., Vol. I at 35. The court, however, barred argument on White's credibility because he had no memory of the events of April 10-11 and was not going to be called to testify. It also cautioned that although it was giving permission to inquire briefly into "the habits and background of Mr. White for purposes [of] jury assessment of damages," it would not allow defense counsel to "just grind away at it here." Id. at 41.

The case proceeded to trial. During opening argument, White's criminal record was not explicitly raised. Plaintiff's counsel mentioned that White "has had a rough life" and made an oblique reference to "sinners." Id. at 46. Defense counsel made no comment on White's character or record. [4]

Before resting plaintiff's case, counsel again challenged the admissibility of White's criminal record. He stated his understanding that the court had ruled the evidence was "admissible to rebut some, either evidence or some assertion of

---

[3](...continued)
a minor to commit or participate in burglary in the second degree, id. at 89-90. The exhibit also contains references to charges of transporting a loaded firearm, possession of a sawed-off shotgun, and driving under suspension. Id. at 20.

[4]     Although not mentioned in the briefs on appeal, apparently defense counsel cross-examined White's life-care expert concerning the effect of criminal convictions on future expenses. See Appellee's Supp'l App, Vol. II at 324-25.

hedonic kinds of damages." Id., Vol. II at 323. The court explained its theory

that a criminal past is "to be taken into account on questions of enjoyment of life"

under the Oklahoma damages categorization of "'mental pain.'" Id.

The issue was revisited again upon the filing of "PLAINTIFF'S

EXCLUSIONARY MOTION IN LIMINE NO. 6 AND, IN THE ALTERNATIVE,

MOTION TO BIFURCATE TRIAL." Appellant's Amended App. at tab 7.

In this motion, plaintiff argued that White's criminal history was irrelevant and

prejudicial. See id. Additionally, plaintiff offered to withdraw any request for

damages based on pain and suffering. See Appellee's Supp'l App., Vol. III

at 426.

The court denied the exclusion motion, primarily based on plaintiff's

showing of a video depicting White's present condition and requesting life-care

damages projected for White's life expectancy in the amount of $5,887,332. [5]

The court stated that it takes a

> discerning mind . . . to make a strict differentiation between hedonic
> damages as a separate category and the loss of pleasure in life as
> a pain and suffering - - mental pain and suffering component, but
> certainly damages are contemplated in law for the latter. And the
> jury was shown the videotape from which, I'm sure, is sought the
> inference for them that this man can't do what he used to do and he

---

[5] This amount includes items for medical treatment, healthcare, equipment, transportation, and modifications to White's home. It was not reduced to present value.

can't be what he used to be, and consequently the jury is entitled, in my opinion, to know what he used to do and what he used to be.

Id. at 429. The court also denied the motion to bifurcate the trial.

At the conclusion of defendants' case, a record of White's criminal history was admitted into evidence. Id. at 626; Appellant's Amended App., Tab 11. In his rebuttal case, plaintiff's counsel called a family member to testify on mitigating circumstances concerning some of White's convictions. See Appellee's Supp'l App., Vol. III at 928-30. During closing argument, plaintiff's counsel admitted that White had been in prison, but stated that White had now "paid the full price for his failures." Id. at 630. Defense counsel did not allude to White's criminal history.

On the substantive malpractice issues, the bulk of trial time was devoted to the testimony of the well-credentialed medical experts appearing for both sides of the case. Plaintiff's experts asserted that White's treatment at Sayre Memorial Hospital fell below the applicable standard of care. They focused primarily on two issues: (1) White, who was certainly intoxicated and possibly brain-damaged at the time of admission, could not have made a competent decision to refuse medical care and (2) an inexcusable amount of time elapsed between White's neurological collapse and his transfer to a facility with the capability to perform CT scans and neurosurgery. Additional fault was found with the hospital's

medical records and deviations from standard protocols for observing a potentially brain-damaged patient.

On the other hand, defense experts testified that, even with the benefit of hindsight, they believed that Sayre Memorial Hospital had provided White with appropriate medical care. In particular, one of the neurosurgeons who treated White at University Hospital stated that the choices made by Dr. Whinery were quite proper. Although White presented with a suspicious situation for a head injury, until the 2:45 a.m. change in his condition, there were no clinical signs or symptoms of the hematoma. Therefore, Dr. Whinery's admission of White for observation was a conservative, prudent measure, especially in light of White's intoxication and belligerent attitude. Furthermore, the elapsed time between this event and the transfer to University Hospital was reasonable in light of the circumstances. The defense also pointed out that the facilities at Sayre Memorial Hospital cannot be compared to those available at a regional teaching center.

The case was submitted to the jury on the seventh day of trial. Although the court had invited a limiting instruction concerning the use of White's history for a damage determination, none was proffered. The jury returned a verdict in favor of defendants. Plaintiff then appealed on the grounds that the district court committed reversible error in admitting evidence of White's criminal history.

## DISCUSSION

We do not overturn a district court's decision to admit or exclude evidence absent an abuse of discretion, see McCue v. Kansas, 165 F.3d 784, 788 (10th Cir. 1999), and then, only if a substantial right of a party is affected, see 28 U.S.C. § 2111; Fed. R. Evid. 103(a); Fed. R. Civ. P. 61; see also Coletti v. Cudd Pressure Control, 165 F.3d 767, 773, 776 (10th Cir. 1999). We have defined an error affecting a substantial right of a party as "an error which had a substantial influence on the outcome or [which] leaves one in grave doubt as to whether it had such an effect." United States v. Velarde, 2000 WL 710494, *7 (10th Cir. June 2, 2000) (citations and quotations omitted; alteration in original). In conducting our harmless error analysis, we review the record as a whole. See United States v. Charley, 189 F.3d 1251, 1270 (10th Cir.1999), cert. denied, 120 S. Ct. 842 (2000). [6]

---

[6]     Defendants argue that plaintiff waived his objection to introduction of the criminal history by his opening-argument characterization of White as a "sinner" and reference to White's "rough life." We are not convinced that these light-handed descriptions "opened the door" and invited introduction of evidence on prior criminal convictions. In any event, opening argument took place only after the court denied plaintiff's motion in limine. Such a motion is sufficient to preserve an objection to the admission of evidence, and thereby avoid application of the narrow, plain-error standard of review, if a three-part test is met. Pandit v. American Honda Motor Co., 82 F.3d 376, 380 (10th Cir. 1996) (citing Green Constr. Co. v. Kansas Power & Light Co., 1 F.3d 1005, 1013 (10th Cir. 1993)). We must be satisfied that (1) the matter was adequately presented to the district court; (2) the issue was of a type that can be finally decided prior to trial; and

(continued...)

We cannot say that the district court abused its discretion in admitting evidence of White's criminal record, in that its ruling appears to be related to the theory of hedonic damages. We also note that the Oklahoma Supreme Court has stated that "there is no rule except the enlightened conscience of an impartial jury" to determine the appropriate recovery for future pain and suffering. Bready v. Tipton, 407 P.2d 194, 206 (Okla. 1965) (quoting Collins v. McPherson, 85 S.E.2d 552, 555 (Ga. Ct. App. 1954)). The scope of relevant evidence, therefore, sweeps broadly.

Moreover, even assuming that the court's evidentiary ruling was erroneous, we do not believe that admission of the evidence affected White's "substantial right[s]." 28 U.S.C. § 2111; Fed. R. Evid. 103; Fed. R. Civ. P. 61. After reviewing the record presented, we cannot say that it substantially influenced the trial's outcome, or that we are in grave doubt as to whether the evidence had such an effect. See United States v. Velarde, 2000 WL 710494 at *7. The restrained use of the evidence at trial, along with its limited scope, served to minimize the adverse effect of the contested evidence. More importantly, there is ample

---

[6](...continued)
(3) the court's ruling was definitive. Id. With each of plaintiff's attempts to obtain reconsideration, the district court expounded on its reasoning but never changed its initial ruling on the admissibility of the evidence. We conclude the motion in limine was sufficient to preserve the objections not made in front of the jury.

-11-

evidence in the record on the substantive malpractice issues to support the jury's verdict. We conclude, therefore, that if the district court committed any error in admitting the contested evidence, that error was harmless. [7] Consequently, the judgment in favor of defendants need not be overturned on appeal. AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[7] To resolve this case, we need not "enter . . . the much conflicted body of jurisprudence regarding burdens or presumptions in harmless error analysis in civil cases." Allen v. Minnstar, Inc. , 97 F.3d 1365, 1374 (10th Cir. 1996) (Lucero, J., concurring). We are convinced that, wherever the burden is placed, the admission of White's criminal record was harmless. Additionally, our determination that the evidence did not substantially influence the trial's outcome means that we need not reach plaintiff's contention that he should have been allowed to eliminate his request for pain-and-suffering damages.