FILED
United States Court of Appeals
Tenth Circuit

February 25, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

KATHLEEN SARIAH PERKINS,

Plaintiff-Appellee,

v.

SILVER MOUNTAIN SPORTS CLUB
AND SPA, LLC, a limited liability
company,

Defendant-Appellant.

No. 07-4130

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 1:06-CV-23-BSJ)

---

Joseph E. Wrona (Bastiaan K. Coebergh and Tyler S. Foutz with him on the
briefs), Wrona Law Offices, Park City, Utah, for Appellant.

Mark L. McCarty (Roberts L. Stevens and Martha Knudson with him on the
brief), Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for Appellee.

---

Before **KELLY**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Kathleen Sariah Perkins filed a wrongful termination action against Silver Mountain Sports Club & Spa, LLC, alleging she was fired because she was pregnant and requested leave. After trial in the district court, a jury returned a verdict finding Silver Mountain had violated Perkins's rights under the Family and Medical Leave Act (FMLA) and Title VII.

On appeal, Silver Mountain argues the district court erred by excluding after-acquired evidence of misconduct by Perkins during her employment. Silver Mountain also contends the district court improperly prevented it from rebutting testimony concerning the parties' withdrawn and dismissed claims and counterclaims.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and finding no error, we AFFIRM.

## I. Background

Silver Mountain is a health club located in Park City, Utah. Perkins is a resident of Park City and was employed by Silver Mountain until September 2005. Although she was initially hired as a part-time front-desk clerk, Perkins was promoted several times; first to the position of "Manager on Duty," then to "Front Desk Manager and Membership Director," and finally to an accounting position. R. Vol. I at 71.

In August 2005, when Perkins was approximately five months pregnant, she inquired into Silver Mountain's maternity leave policies and prepared for her

impending absence. A month later, Silver Mountain terminated Perkins's employment. Perkins then filed suit alleging Silver Mountain terminated her because she was pregnant, and in doing so, had violated her Title VII and FMLA rights. Perkins also asserted a cause of action for defamation and alleged Silver Mountain slandered her by accusing her of embezzling company funds. However, Perkins voluntarily withdrew this particular claim before trial.

Silver Mountain disputed her allegations and claimed Perkins had in fact been terminated for a litany of reasons unrelated to her pregnancy. Among other reasons, Silver Mountain contended it was reorganizing, that Perkins's job description was changed as a result of the reorganization, and that Perkins's job performance was sub-par.

Additionally, Silver Mountain alleged Perkins was terminated because she had been "repeatedly caught embezzling funds and services." R. Vol. I at 41. Silver Mountain claimed in its answer to the complaint that Perkins, in April 2005, paid an $818.55 cellular telephone bill using company funds without authorization. This bill included both personal and business telephone calls. Perkins subsequently repaid approximately $270, the amount which comprised her personal use, and was informed she was not permitted to use company funds to pay her phone bill in the future without authorization. Silver Mountain, however, did agree to pay $35 of her cellular phone bill every month to cover business-related phone call expenses. After Perkins was terminated, Silver Mountain

allegedly discovered that her August 2005 phone bill, in the amount of $73.22, was again paid with company funds. Nevertheless, Silver Mountain later dropped its contention Perkins was fired for embezzlement. Finally, Silver Mountain asserted several counterclaims, including a claim Perkins converted company funds and services, which were later dismissed before trial on summary judgment.

After a three-day trial, the jury returned a verdict in Perkins's favor, finding Silver Mountain had (1) terminated Perkins due to her request for leave under the FMLA, (2) discriminated against Perkins because of her status as a pregnant woman, and (3) acted maliciously or with reckless indifference to Perkins's rights. The jury awarded $20,000 in lost wages and benefits and $30,000 in punitive damages. Silver Mountain timely appealed.

## II. Discussion

Silver Mountain challenges on appeal two evidentiary rulings by the district court. First, it contends the district court erred by excluding after-acquired evidence of alleged misconduct by Perkins in making an August 2005 cell phone payment with company funds; and, second, the district court improperly prevented it from rebutting testimony concerning Perkins's withdrawn defamation claim and Silver Mountain's dismissed embezzlement counterclaim. We discuss each in turn.

### A.    After-Acquired Evidence

*1. Background*

Both parties sought pre-trial guidance on how the district court planned to address after-acquired evidence.

Perkins first filed a motion in limine asserting two separate bases for excluding the after-acquired evidence of alleged misconduct during her employment. First, she argued any after-acquired evidence was irrelevant and substantially more prejudicial than probative under Federal Rules of Evidence 402 and 403 because Silver Mountain had conceded it was not aware of the alleged misconduct at the time it terminated Perkins's employment. Second, Perkins argued that any discussion of the August 2005 payment might be used to impermissibly argue she acted in conformance with a propensity or character trait.

Silver Mountain argued in response, without specifying any particular basis for admissibility, that any after-acquired evidence of misconduct by Perkins during her employment was relevant and could be considered by the jury under controlling Supreme Court precedent, *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995).

In *McKennon*, the Supreme Court considered what role evidence discovered by an employer, after it had already terminated an employee in violation of the Age Discrimination in Employment Act of 1967 (ADEA), plays in the determination of liability and damages for that wrongful termination. 513 U.S. at 354. The Court held after-acquired evidence of misconduct by the former

employee during the time of employment, while not relieving the employer of *liability*, may be relevant to the issue of *damages*. *Id.*

According to the Court, because Congress had designed the ADEA as part of a broader remedial framework to eliminate discrimination in the workplace, "[i]t would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act." *Id.* at 358. As a consequence, the employer may be liable for the wrongful discharge of the employee, but the Court limited the admissibility of the after-acquired evidence to the determination of damages. *Id.* at 362. As we said in *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 554 (10th Cir. 1999), under "*McKennon*, information that an employer learns after it has discharged an employee is not relevant to the determination of whether an employer violated Title VII because it necessarily played no role in the actual decision."

In applying *McKennon*, the district court considers a two-step process. First, the employer must establish "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362–63; *see Ricky v. Mapco, Inc.*, 50 F.3d 874, 876 (10th Cir. 1995) (stating the employer must not only show that it was unaware of the misconduct at the time it terminated the employee, but that the misconduct was "serious enough to justify

-6-

discharge" and that it would have discharged the employee had it known about the misconduct).  Second, and only after an employer has met this initial showing, the after-acquired evidence may then be considered to limit the damages remedy available to the wrongfully terminated employee.  *McKennon*, 513 U.S. at 362 ("The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered.").

Before the court ruled on Perkins's motion in limine, Silver Mountain filed its own motion in limine to establish *McKennon* as the law of the case.  In particular, Silver Mountain contended *McKennon* mandates the trial court admit after-acquired evidence of an August 2005 cell phone payment as a limitation on back pay and compensatory damages and it need not prove that Perkins had in fact made the payment with company funds.  Perkins, in turn, argued the motion was premature and Silver Mountain was required to make an offer of proof at trial before any after-acquired evidence would be admissible.

As to liability, the district court ruled that "post-discovered" events were not relevant to that question.  Accordingly, the district court held the August 2005 cell phone payment would not be admissible as a justification for terminating Perkins's employment.  But as to damages, the court reserved ruling on the application of *McKennon*, directing Silver Mountain to make an offer of proof of

what evidence it wished to proffer as a part of its defense to Perkins's damages

claim.[1]

Silver Mountain now argues the district court erred by failing to allow it to

introduce evidence at trial of the August 2005 cell phone payment as after-

acquired evidence of misconduct by Perkins under *McKennon*.

2. *Standard of Review*

Before addressing the merits of the court's rulings, we first address the

proper standard of review. Ordinarily, we consider evidentiary questions under

the familiar abuse of discretion standard. *E.g.*, *Abuan v. Level 3 Commc'ns, Inc.*,

353 F.3d 1158, 1171 (10th Cir. 2003).[2] But here the court never definitively ruled

on a discrete proffer of evidence from Silver Mountain. Instead, the court only

considered the motion in limine filed before trial, a filing that generally alleged

Perkins had violated company policy and breached an agreement she had with the

company regarding cell phone reimbursement, which would have resulted in her

---

[1] Although the district court did not make the offer of proof requirement entirely clear when it reserved ruling on the motion, it did articulate this requirement during the course of trial. The court placed the duty on Silver Mountain to demonstrate, outside the presence of the jury, the substance of any after-acquired evidence and the grounds for admitting such evidence.

[2] Silver Mountain argues for a de novo standard of review, claiming the district court committed legal error. As we explain more fully below, the court correctly recognized that *McKennon might* apply to the question of damages, and properly reserved ruling on the evidentiary question until later in the trial.

termination.  The court placed the burden on Silver Mountain to make the *McKennon* proffer at the relevant time at trial.

Rule 103 of the Federal Rules of Evidence provides: "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."  Fed. R. Evid. 103(a)(2).  Two deferential standards of review apply to a district court's decision to exclude evidence pursuant to Rule 103.  If the proponent of the excluded evidence or testimony made an adequate offer of proof, the trial judge's decision to exclude the evidence is reviewed for an abuse of discretion.  *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1407 (10th Cir. 1991) (citing *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1266 (10th Cir. 1988)).  Even if the trial judge "abused his or her discretion in making a decision to exclude evidence, we will overlook the error as harmless unless a party's substantial right was affected."  *Id.*

Similarly, if the proponent of the excluded evidence failed to meet the requirements of Rule 103 for an offer of proof, we can reverse "only in instances of plain error that affected appellant's substantial rights."  *United States v. Adams*, 271 F.3d 1236, 1241 (10th Cir. 2001) (citing Federal Rule of Evidence 103(d)).  In civil cases, plain error is limited to "errors which seriously affect 'the fairness, integrity or public reputation of judicial proceedings.'"  *Angelo v.*

*Armstrong World Indus., Inc.*, 11 F.3d 957, 961 (10th Cir. 1993) (quoting *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1460 (10th Cir. 1987)).  Consequently, the plain error rule is an "extraordinary remedy which is invoked only in exceptional circumstances to avoid a miscarriage of justice."  *Polys*, 941 F.2d at 1408 n.5 (internal quotations omitted).[3]

### 3.  Analysis

To answer the standard of review, we must first determine whether Silver Mountain made the requisite offer of proof.  An offer of proof is necessary to permit the trial judge to make an informed evidentiary ruling as well as "to create a clear record that an appellate court can review to 'determine whether there was reversible error in excluding the [testimony].'"  *Id.* at 1406–07 (alteration in original) (quoting *New Mexico Sav. & Loan Ass'n v. United States Fid. & Guar. Co.*, 454 F.2d 328, 334 (10th Cir. 1972)).  But "'merely telling the court of the content of . . . proposed testimony' is not an offer of proof."  *Id.* at 1407 (quoting *Gates v. United States*, 707 F.2d 1131, 1145 (10th Cir. 1983)).  Instead, the proponent must "describe the evidence and what it tends to show and . . . identify the grounds for admitting the evidence."  *Adams*, 271 F.3d at 1241.  Where both

---

[3] Silver Mountain argues that this court should review the "trial court's decision to disregard the rule of law established by *McKennon*" de novo.  Aplt. Br. at 20 (arguing that determinations on questions of law are subject to de novo review).  However, the issue actually centers around Silver Mountain's failure to comply with Rule 103 requirements for an offer of proof and the resulting decision by the district court to exclude the after-acquired evidence of misconduct on the issue of damages.

proper and improper purposes for proffered evidence exist, the offer of proof must rule out the improper purposes because the trial judge is not required to "imagine some admissible purpose." *Angelo*, 11 F.3d at 961 (quoting *United States v. Willie*, 941 F.2d 1384, 1394 (10th Cir. 1991)). Finally, Rule 103 does not require any specific form for offers of proof. *Adams*, 271 F.3d at 1241. Instead the trial judge has discretion to shape the manner and form of the offer of proof. *Id.*

We agree the district court did not err in excluding the evidence. While given ample opportunity, Silver Mountain failed to make an adequate offer of proof concerning the content and admissibility of the August 2005 cell phone payment, so plain error review governs.[4] Several reasons support this conclusion.

*First*, Silver Mountain failed in its motions to demonstrate how it would comply with *McKennon* other than pointing to one company billing record that purported to show a cell phone payment. Rather than *correctly* explaining how the record would show misconduct by Perkins severe enough to justify

---

[4] We have applied a three-part test to determine "whether a party must renew a motion in limine by a contemporaneous objection at trial to preserve an issue for appeal." *Pandit v. American Honda Motor Co., Inc.*, 82 F.3d 376, 380 (10th Cir. 1996). Waiver may occur unless "(1) the matter was adequately presented to the district court; (2) the issue was of a type that can be finally decided prior to trial; and (3) the court's ruling was definitive." *Id.* Here, because the district court judge *reserved* ruling on the motion in limine raising the issue of whether the *McKennon* rule for after-acquired evidence would apply, there was no definitive ruling. Thus, Silver Mountain should have made an adequate offer of proof at trial to preserve the issue for appeal. *See* Fed. R. Evid. 103(a).

termination, Silver Mountain *incorrectly* argued that *McKennon* stands for the proposition that it has "an absolute right to introduce . . . [the] August 2005 cell phone payment into evidence," R. Vol. I at 164, and it would undoubtedly have fired Perkins for that payment. But lawyer argument is not admissible evidence.

And while Silver Mountain is correct that evidence of a terminable offense may "bar[] Perkins from calculating damages," *id.*, beyond the time of discovery by Silver Mountain, it failed several basic foundational requirements under the rules of evidence. No single form governs how a court must receive a proffer of evidence to resolve a *McKennon* allegation. At the very least, the court must be given enough information to determine admissibility of the evidence, to resolve other evidentiary questions relating to Rules 402 and 403 regarding relevancy and prejudice, and to determine the existence of a question of fact for the jury on the severity of the employee's misconduct and damages. Thus the district court did not err in choosing to reserve ruling on the *McKennon* question until an appropriate time at trial.

*Second*, Silver Mountain failed to supplement its motion in limine and make a proper offer of proof at trial. For example, at the end of the first day of trial Silver Mountain again raised the *McKennon* issue. The judge clarified the form and manner of what he expected Silver Mountain to proffer:

> And then you get into the interesting question of the question we reserved upon, as to the duty of a defendant to demonstrate, ordinarily outside the presence of the jury, that there is justification for dealing

with a $35 bill as something that's extraordinary, as something that is justification for bringing the question up at all. Now if we're talking about somebody running off with thousands of dollars, maybe that burden would be a little less daunting. . . . I'm concerned about the fact – and I'll lay it out – if somebody is going to plead embezzlement, they darn well better be in a position to demonstrate it. And if you don't have a modicum of evidence, if you don't have a sufficient basis, then you better take a hard look at Rule 11.

*Id.* at 475–77. Similarly, during the second day the judge reminded counsel that the matter was still on reserve until "we get to a point where it may be pertinent." R. Vol. II at 537. Nevertheless, Silver Mountain never made any attempt to meet its burden by sufficiently outlining the content of any after-acquired evidence and the grounds for its admissibility under *McKennon*.[5]

In this case, for example, to make a proper *McKennon* proffer at trial, Silver Mountain, among other things, could have demonstrated: (1) a basis for authenticating the $73 August 2005 payment record; (2) the payment was unauthorized; (3) Perkins was in fact responsible or credibly thought to be responsible for the payment; (4) the unauthorized payment would have been sufficient alone to justify her termination through testimony of a company

---

[5] Silver Mountain correctly states that the question of whether the misconduct was severe enough to justify termination, when that would have occurred, and the amount of damages are questions for the jury. *Ricky*, 50 F.3d at 876. We do not read the record to suggest the district court ruled as a matter of law that the allegations of misconduct were insufficient to satisfy *McKennon*.

manager or her supervisor; and (5) when the termination would have occurred and how it would affect her damages claim.[6]

Silver Mountain never made such a showing at trial, telling the court what witnesses and other evidence would support its *McKennon* argument. In short, the trial court could not have determined whether *McKennon* would apply unless Silver Mountain offered sufficient admissible evidence to satisfy the *McKennon* analysis. Recognizing this, the district court was within its discretion to exclude the August 2005 evidence as it related to liability and properly reserved ruling on whether *McKennon* applied until Silver Mountain made a sufficient offer of proof during the case on damages. Silver Mountain never did so.[7]

In summary, the district court did not commit plain error in its evidentiary ruling at trial. The district court had no obligation to automatically admit the evidence concerning the August 2005 cell phone payment. In fact, the court properly concluded the after-acquired evidence was irrelevant to the issue of liability and reserved a final determination of admissibility until it became

---

[6] As discussed above, Silver Mountain's motion in limine did not adequately address these requirements. It should have made an adequate offer of proof at trial to preserve the issue for appeal, especially in light of Perkins's objections to the accuracy of the allegations of misconduct. *See* Fed. R. Evid. 103(a).

[7] Silver Mountain raised this issue once again after the jury had already returned a verdict and had been dismissed by the court. Because Silver Mountain failed to make an adequate offer of proof, the district court judge was left with no choice but to finally determine that the post-termination evidence was "irrelevant under the circumstances." R. Vol. II at 906.

relevant to the question of damages. Under *McKennon*, the district court was not required to consider after-acquired evidence until Silver Mountain provided sufficient admissible evidence that Perkins's misconduct—had it been known—would have justified termination. Nor was it error for the district court to require the proffered evidence to be submitted initially outside the presence of the jury.

Consequently, the district court did not err because it was never given the opportunity to evaluate the evidence Silver Mountain claims satisfies *McKennon*.

**B.    Evidence Concerning Withdrawn or Dismissed Claims and Counterclaims**

Silver Mountain also contends the district court improperly prevented it from (1) eliciting rebuttal testimony concerning a defamation claim that Perkins had originally asserted against it but had withdrawn prior to trial, and (2) explaining the basis of its embezzlement counterclaim against Perkins that became the basis of some testimony at trial. We find no error by the district court.

By way of background, Perkins's original complaint asserted a defamation cause of action against Silver Mountain on the basis of claims it made that Perkins embezzled funds by paying her private cell phone bill with company funds. Silver Mountain in turn had originally asserted counterclaims alleging

Perkins had converted company funds and services.[8]  The district court, however,

dismissed these counterclaims on summary judgment.  After Silver Mountain's

counterclaims were dismissed, Perkins voluntarily withdrew her defamation

claim.  Before trial, Silver Mountain filed a motion in limine seeking to preclude

any evidence or reference by *either* party to the withdrawn defamation claim and

to its own dismissed counterclaims.

Immediately before trial, the district court granted Silver Mountain's

motion and found the withdrawn or dismissed claims were "simply not part of

what remains for decision."  R. Vol. I at 275, ¶¶ 4–5.  The district court, however,

expressly stated neither party was precluded from introducing relevant factual

inconsistencies contained in the earlier pleadings.

During trial, Perkins referred to Silver Mountain's embezzlement

allegations in her opening statement, in direct examination of several witnesses,

as well as in her closing.  At each of these instances, Perkins discussed these

allegations to demonstrate inconsistent factual assertions by Silver Mountain

concerning its justification for terminating Perkins's employment.  Although

Silver Mountain objected, the district court held these references were admissible:

---

[8]  Additionally, Silver Mountain's first Answer and Counterclaim asserted an affirmative defense to Perkins's wrongful termination claims alleging Perkins was "repeatedly caught embezzling funds and services" from Silver Mountain and had "volunteered to terminate her employment" as a result.  R. Vol. I at 41. Subsequent pleadings by Silver Mountain omitted any direct references to "embezzlement."

Well, the question of the reasons given for the termination is a question involving shifting positions. And one is entitled to demonstrate that at one point in time, there was an assertion that the reason for the termination consisted of reason A, and then it became reason B, and then it became reason C. Then the question is really one of whether the reason ultimately cited is inconsistent with the reasons originally given in the written document filed with the court. . . . [T]he reasons given early, purportedly, are different than the reasons given later. And it's perfectly permissible for counsel for plaintiff to point out the inconsistency.

R. Vol. II at 537.

Silver Mountain now argues the district court erred in permitting Perkins to "portray Silver Mountain as an oppressive litigant using retaliatory and shifting pleading tactics" while at the same time preventing it from responding. Aple. Br. at 29. Silver Mountain contends the district court improperly prevented it from eliciting rebuttal testimony concerning Perkins's withdrawn defamation claim as well as its reasons for alleging embezzlement in its own Answer and Counterclaim. We disagree.

As an initial matter, Silver Mountain contends that we should review the district court's refusal to permit rebuttal testimony for an abuse of discretion. *See, e.g.*, *Koch v. Koch Indus.*, 203 F.3d 1202, 1224 (10th Cir. 2000). Under this standard, the district court's "decisions regarding the presentation of evidence will not be disturbed absent a showing of manifest injustice to the parties." *Munoz v. Saint Mary-Corwin Hosp.*, 221 F.3d 1160, 1168 (10th Cir. 2000). Perkins, however, disagrees and argues Silver Mountain failed to proffer a sufficient offer of proof, thereby not preserving its objection to the district court's

-17-

exclusion of the rebuttal evidence, and as a consequence, argues we may "reverse only if there was plain error." *Polys*, 941 F.2d at 1408 (citing Federal Rule of Evidence 103(d)).

We agree with Perkins, although the district court did not err under either standard. As we stated above, "[i]n order to qualify as an adequate offer of proof, the proponent must, first, describe the evidence and what it tends to show and, second, identify the grounds for admitting the evidence." *Adams*, 271 F.3d at 1241. And, "where there were both proper and improper purposes for proffered evidence but no offer of proof to rule out the improper purpose . . . 'the judge can do no wrong' in excluding the evidence because we will not require the trial judge to 'imagine some admissible purpose.'" *Angelo*, 11 F.3d at 961 (quoting *Willie*, 941 F.2d at 1394). Because no relevant grounds for admitting the rebuttal testimony were clear at trial and because Silver Mountain failed to make an offer of proof articulating any relevant grounds, any error by the district court in excluding the testimony must be reviewed solely for plain error.

We find no error here. First, Silver Mountain never demonstrated to the district court how or what evidence it intended to present that would have demonstrated a factual inconsistency in Perkins's testimony or court filings.[9]

_____

[9] Silver Mountain failed to make *any* offer of proof concerning its purported "rebuttal" evidence. It only made one attempt to introduce such evidence—during cross-examination of Silver Mountain's owner. When the court cut off the inquiry into the timing of Silver Mountain's embezzlement allegations,
(continued...)

-18-

Thus, any error by the district court was not plain or obvious. Second, even on appeal Silver Mountain has yet to demonstrate any admissible purpose for the excluded rebuttal testimony. The fact a defamation claim was made does not obviously demonstrate an inconsistency with trial testimony, but more importantly, Silver Mountain never explained to the court how it would do so in conformance with the court's pre-trial rulings.[10] Finally, because Silver Mountain has not shown the rebuttal evidence would have affected the outcome of the proceedings, it has failed in its burden to show how the exclusion affected any of its substantial rights under our plain error standard. Therefore, there was not error sufficient to warrant the "extraordinary remedy" of reversal. *Polys*, 941 F.2d at 1408 n.5.

Nor does Silver Mountain demonstrate the district court abused its discretion to create a "manifest injustice" in the presentation of evidence. Silver Mountain simply did not show how the proposed rebuttal testimony complied

---

[9](...continued)
Silver Mountain did not explain what factual inconsistency it was going to show nor how such testimony may be relevant to liability or damages. Additionally, Perkins was called as a witness during trial on two separate occasions and Silver Mountain never questioned her regarding her withdrawn defamation claim.

[10] Unlike Silver Mountain, Perkins introduced evidence relating to Silver Mountain's embezzlement allegations to show Silver Mountain's shifting justifications for terminating her employment. Despite Silver Mountain's perfunctory claims on appeal, it was not prevented from presenting an arguable factual inconsistency in Perkins's claims.

with the court's pre-trial order or explain—unlike Perkins—how the testimony would show factual inconsistencies with the dismissed or withdrawn claims.

In sum, the district court did not err when it precluded Silver Mountain from presenting rebuttal testimony on the dismissed or withdrawn claims and counterclaims.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's rulings.